McMILLIN et al. v. WILSON et ux.

No. 1852.

Court of Civil Appeals of Texas. Eastland.

Nov. 11, 1938.

Rehearing Denied Dec. 9, 1938.

Smith & West, of Henderson, for appellants.

Geo. T. Wilson, of San Angelo, for appellees.

GRISSOM, Justice.

Plaintiffs, W. E. Wilson and wife, Lennie Lee Wilson, sued defendants, J. F. McMillin and Texas Canadian Oil Corporation, Ltd., to recover $800 agreed to be paid plaintiffs, out of oil, as the consideration for an assignment of oil and gas lease by plaintiffs to McMillin. Plaintiffs alleged that they entered "into an agreement with McMillin, acting for himself and Texas Canadian Oil Corporation, Ltd., by the terms of which it was agreed and understood that Ben Cooper (brother of Mrs. Wilson) would assign to the said J. F. McMillin an oil and gas lease on the north 2¼ acres of said 4½ acre tract and the plaintiffs would assign to McMillin an oil and gas lease

covering the south 2¼ acres of said 4½ acre tract" and that "the said defendant would drill the first well on some part of the 4½ acre tract beginning within 30 days from the time of said contract, and out of the first oil produced from said 4½ acre tract would pay plaintiffs a bonus of $800 as provided in the assignment hereafter set out." Plaintiffs alleged that, pursuant to such agreement, McMillin prepared an assignment of an oil and gas lease, which was executed by plaintiffs. Said assignment recites the execution by C. C. Cooper (another brother of Mrs. Wilson) and his wife to Joe A. Sanders of an oil and gas lease on an 86.5 acre tract of land; that on the same date, W. H. Bode, and others, also executed an oil and gas lease to Sanders on the same land. It continues "Whereas, the said lease and all rights thereunder or incident thereto are now owned by Lennie Lee Wilson and W. E. Wilson insofar as it covers the hereinafter described 2¼ acre tract." It recites that for $1 and other good and valuable consideration, plaintiffs assign said lease to McMillin "insofar as it covers the following described 2¼ acres of land, to-wit: 'Being the south 2¼ acres of the following described 4½ acre tract." Then follows a description of the 4½ acre tract. The assignment then continues:

"As further and additional consideration for this transfer and assignment, the assignee herein agrees to pay assignor eight hundred dollars, $225 of said amount to be payable out of the first oil produced, saved and marketed *from said premises,* the remaining $575 of said oil payment is to be payable out of ⅛ of the ⅞ of all the oil saved, produced and marketed *from said premises.* It is understood that the above amounts are to be payable out of the prorata part of the oil as mentioned as and when produced solely and alone and is not to be a personal obligation of the assignee herein.

"Assignee agrees to begin operation for drilling a well *on some part* of the above described 4½ acres tract within 30 days from date of obtaining permit therefor he to use due diligence in obtaining permit." (Italics ours.)

Plaintiffs alleged that after the execution of said assignment defendants promptly drilled an oil well on the north 2¼ acres of said 4½ acre tract; that defendants have been producing oil from said well since about July, 1935; that defendants have produced enough oil from said well to pay plaintiffs, out of oil therefrom, taken in the proportion recited in the assignment, the consideration agreed to be paid for the assignment. That McMillin had assigned the lease to his co-defendant Texas Canadian Oil Corporation, Ltd., who took the assignment charged with the consideration payable to plaintiffs.

Defendants answered by disclaiming all right, title and interest in the oil and gas lease assigned to McMillin by plaintiffs, by general demurrer, special exceptions and general denial.

Upon a trial to the court, judgment was rendered for plaintiffs against defendants for $800, with interest from June 15, 1936. The court recited in its judgment that it found: " * * * that the contract pleaded by plaintiffs provides for the payment of the sum of $800 out of oil produced and marketed from the well provided for by said contract and that said well was drilled and completed about October 1, 1935, and has produced sufficient oil so that the porportion out of which said sum ($800.00) was to be paid entitled the plaintiffs to receive all of said $800 not later than June 15, 1936, and that the plaintiffs are entitled to recover of and from defendants J. E. McMillin and Texas Canadian Oil Corporation Ltd. the sum of $800 with interest thereon at the rate of 6 per cent per annum from said date of June 15, 1936, together with all costs," etc.

From the judgment rendered defendants have appealed.

The evidence introduced and agreements made on the trial show that at the time plaintiffs made the assignment of the south 2¼ acres of the 4½ acre tract, out of the 86.5 acre tract, Mrs. Wilson's brother, Ben Cooper, assigned to McMillin the north 2¼ acres of said 4½ acre tract; that defendants drilled a well on the north 2¼ acres assigned to defendants by Ben Cooper; that said well has been producing oil since October, 1935; that it has produced enough oil to pay plaintiffs out of said oil, the consideration agreed to be paid for plaintiff's assignment; that no well has been drilled on the south 2¼ acres assigned by plaintiffs, and plaintiffs have never been paid anything for said assignment; that defendants and others have other producing wells adjacent to the 4½ acre tract covered by the assignments by plaintiffs and Ben Cooper.

Defendants contend that plaintiffs were not entitled to the $800 consideration agreed

to be paid them as recited in their assignment to McMillin, unless and until sufficient oil is produced from the south 2¼ acre tract assigned by plaintiffs to McMillin. Defendants further contend the recitals in plaintiffs' assignment to McMillin "as further and additional consideration for this transfer and agreement, the assignee herein agrees to pay assignor $800" out of oil "produced, saved and marketed *from said premises*" means the payment was to be made out of oil produced from the south 2¼ acre tract, the lease on which was assigned by plaintiffs to McMillin, and that it has no reference to the 4½ acre tract described in the assignment. The said 4½ acre tract comprises both tracts assigned to McMillin by plaintiffs and Ben Cooper. Plaintiffs contend that the reasonable and proper construction of the instrument is that plaintiffs were to be paid from oil produced from the 4½ acre tract whether it was produced from the tract assigned by them or by Ben Cooper. They point out the following provision of the lease as evidence of the correctness of such contention, to-wit: "Assignee agrees to begin operation for drilling *a well on some part* of the above described 4½ *acre tract* within thirty days from date of obtaining permit therefor he to use due diligence in obtaining permit." Plaintiffs argue that since the assignment provided for the drilling of only one well, and that the consideration to be paid plaintiffs was to be paid out of oil, and expressly provided that such well should be drilled by defendants at any place defendants might choose on the 4½ acre tract, the consideration to be paid out of oil produced must necessarily refer to the oil produced from the one well contracted to be drilled; otherwise the obligation to pay would be meaningless and there would be no source from which the payment could be required to be made. Further, that the only well that had been drilled on the 4½ acre tract, during the more than two years that the assignments from plaintiffs and Ben Cooper had been in existence at the time of the trial, was the one well drilled on the north 2¼ acres of the 4½ acre tract. Plaintiffs further point out that the defendants' well on the 4½ acre tract is about 100 feet north of the land owned by plaintiffs; that defendants have an offset well south of the 4½ acre tract; that other operators have a well immediately west of the 4½ acre tract and that defendants are thereby shown to be draining the oil under plaintiffs' land without paying for it; that such action shows an attempt by defendants to obtain the benefits of plaintiffs' lease without paying for it, and, since the contract provides that plaintiffs are to be paid out of oil and only the drilling of one oil well being contracted for, there is no provision by which the payment out of oil could be made to plaintiffs except from the one well drilled on the north half of the 4½ acre tract in question.

■ The meager evidence introduced indicates that the leasing of the two 2¼ acre tracts by plaintiffs and Ben Cooper and the leasing of the larger tract (out of which the 4½ acre tract is carved) by C. C. Cooper and wife was a family arrangement and possibly for that reason is not to be regarded in the same light as if such parties were strangers. Regardless of the legal effect of the statement in the judgment of the findings of fact by the trial court, it shows what its findings were. We are of the opinion that the trial court's and plaintiffs' interpretation of the assignment, when such instrument is considered in connection with the other circumstances in evidence, is correct and that the trial court correctly found that plaintiffs, under the circumstances disclosed, were entitled to payment of the consideration for their assignment out of oil produced from the 4½ acre tract.

■ Defendants (appellants here) in their brief argue that plaintiffs' abandoned pleadings evidence a construction of the contract by plaintiffs at variance with the plaintiffs' present interpretation of the assignment; that such former construction is in accord with defendants' construction of the assignment. Defendants assert the rule that "when there is any doubt about the construction of a contract, the practical construction which has been given to it by the parties will be adopted by the courts" is here applicable. Defendants are right in their assertion as to what the rule is, but it cannot be applied here for the reason that, if plaintiffs' abandoned pleadings do show all that defendants assert they do, the abandoned pleadings were not introduced in evidence and, therefore, neither the trial court, nor this court, can take cognizance of them.

■ Defendants further contend plaintiffs have failed to show title to the lease assigned and that, therefore, plaintiffs, as vendors, should not be permitted to collect from the defendants, as vendees, the purchase money, in the absence of a showing of title in plaintiffs, or with an outstanding title shown to be in a third person. This is the

rule in a trespass to try title suit. The reason for such rule in a trespass to try title case is obvious. There plaintiff, in order to recover, must show title in himself. Certainly before the rule could be applied to the instant case, such facts, that is, want of title in plaintiffs at the time they assigned the lease to defendants, etc., if they exist, must be pleaded by defendants to show want of consideration, or some other defense, before it can have the effect of defeating recovery of the purchase price agreed to be paid.

. All assignments have been considered and are overruled. (Italics in the opinion are ours.)

The judgment is affirmed.